**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, Plaintiff–Appellee,**

v.

**BES SERVICES, INCORPORATED, formerly known as International Visual Corporation of N.Y., Defendant–Appellant.**

No. 05–1634.

United States Court of Appeals, Fourth Circuit.

Argued: Sept. 19, 2006.

Decided: Nov. 29, 2006.

**ARGUED:** Jason Herbert Ehrenberg, Bailey & Ehrenberg, P.L.L.C., Washington, D.C., for Appellant. Marc H. Rifkind, Slevin & Hart, Washington, D.C., for Appellee. **ON BRIEF:** C. Wayne Owen, Jr., Slevin & Hart, Washington, D.C., for Appellee.

Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit Judge, and HENRY F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Senior Judge HAMILTON and Judge FLOYD joined.

## OPINION

NIEMEYER, Circuit Judge:

After BES Services, Inc., sold all of its assets in March 2002 and ceased being obligated to contribute to the Sheet Metal Workers' National Pension Fund ("the Pension Fund"), the Pension Fund assessed BES with withdrawal liability of $175,833 under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, which amended the Employee Retirement Income Security Act of 1974 ("ERISA").

After paying $22,620 of the assessment, BES declined to make further payments, even though it did not seek arbitration to dispute the Pension Fund's assessment, as would be mandated by 29 U.S.C. § 1401(a)(1) for resolution of such disputes.

The Pension Fund commenced this action to collect the remainder of BES's withdrawal liability and filed a motion for summary judgment. In response, BES claimed that it was entitled to a reduction of its withdrawal liability by reason of the limitations on such liability afforded by 29 U.S.C. § 1405 because (1) it sold all of its assets to an "unrelated" party, and its liquidation value, after the sale, was less than $2 million, entitling it to an assessment of only 30 percent of its gross withdrawal liability, *see id.* § 1405(a); or (2) after the sale of assets, it was "an insolvent employer undergoing liquidation or dissolution and therefore entitled to a 50 percent reduction of its liability," *see id.* § 1405(b).

Concluding that BES waived its right to challenge the amount of withdrawal liability by not pursuing arbitration under § 1401, the district court granted the Pension Fund's motion for summary judgment in the full amount of the assessment, less the payment made, plus interest and liquidated damages. The court also awarded the Pension Fund attorneys fees of $30,000.

We conclude that, despite BES's statutory argument—that § 1405 is not one of the sections explicitly referenced in § 1401 (the mandatory arbitration provision)—consideration of the limitations of § 1405 is required in making a "determination" of withdrawal liability under §§ 1381 and 1391, which are explicitly subject to § 1401's arbitration requirement, and therefore issues arising under § 1405 are subject to § 1401's arbitration requirement

as well. We also reject BES's argument that the issue before us is solely a legal issue of statutory construction that is exempt from § 1401's arbitration requirement. Accordingly, we affirm.

I

BES, a New York corporation owned by Bernard E. Shuman, was formerly known as International Visual Corporation of N.Y. and was engaged in the business of manufacturing store displays. Pursuant to its collective bargaining agreement with the Sheet Metal Workers' International Association Local Union No. 137, BES was obligated to contribute to the Sheet Metal Workers' National Pension Fund, a multiemployer pension plan governed by the MPPAA.

On March 29, 2002, BES entered into an agreement to sell all of its assets to International Visual Corporation of Canada Inc., a Canadian corporation, for $3.98 million. At closing, BES was paid $1.45 million and the remainder of the purchase price was attributed to the Canadian corporation's assumption of BES's accounts payable. Shuman testified by affidavit that following closing, he and BES paid the Canadian corporation roughly $980,000 for additional liabilities and adjustments.

Following the sale, the Pension Fund assessed BES with withdrawal liability imposed by 29 U.S.C. § 1381 in the amount of $175,832.56. BES made one payment in July 2003 of $22,620.08 toward discharging this liability. When BES failed to make any further payments, however, the Pension Fund commenced this action to collect the balance, as well as interest, liquidated damages, and attorneys fees.

In response to the Pension Fund's motion for summary judgment, BES claimed that it was entitled to a reduction of its withdrawal liability, as authorized by

§ 1405, due to (1) the sale of its assets, and (2) its insolvency. BES presented evidence of the agreement for the sale of its assets, its income tax return filed following the sale of assets, and evidence of the subsequent payments made to the Canadian corporation for various additional liabilities and adjustments.

The district court refused to consider making the claimed reductions because BES "was required to arbitrate the issue of whether its withdrawal liability could be reduced or limited under 29 U.S.C. § 1405." Accordingly, the court entered judgment in favor of the Pension Fund in the amount that it claimed. This appeal followed.

## II

BES contends that it is entitled to have a federal court grant the reductions of withdrawal liability afforded by 29 U.S.C. § 1405 and that it need not proceed first to arbitration because § 1405 is not one of the provisions of the MPPAA that is explicitly made subject to mandatory arbitration by § 1401. While § 1401(a)(1) subjects disputes under "sections 1381 through 1399" to arbitration, it makes no reference to § 1405, by which BES seeks to limit its withdrawal liability. BES argues:

Under the doctrine of *expressio unius est exclusio[ ] alterius,* one can logically conclude from the omission of Section [1405] in Section 1401(a)(1)'s arbitration provision that Congress did not intend that disputes arising under [1405](a) or (b) of ERISA would be subject to the aforementioned arbitration requirement.

It requests that we remand this case to the district court to determine the amount of withdrawal liability, taking into consideration the limitations of liability described in § 1405.

Thus, the issue presented is whether a claim to the reductions in withdrawal liability authorized by 29 U.S.C. § 1405 must be arbitrated by reason of the mandatory arbitration provision in § 1401(a).

Section 1401(a)(1) provides:

Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period [after specified dates].

As BES points out, § 1405 is conspicuously absent from the list of sections that § 1401(a)(1) explicitly subjects to mandatory arbitration.

Without looking further, the failure of § 1401(a) to reference § 1405 might suggest that parties may proceed directly to federal court, without first initiating arbitration proceedings, to resolve disputes over whether to limit an employer's withdrawal liability under § 1405.

■ Additionally, § 1405 is explicitly referred to further on in § 1401. Section 1401(a)(3) provides that "any determination made by a plan sponsor under sections 1381 through 1399 of this title *and section 1405* of this title is presumed correct" in any arbitration proceeding. 29 U.S.C. § 1401(a)(3)(A) (emphasis added). The inclusion of § 1405 in this provision might suggest that its exclusion from § 1401(a)(1) was meaningful. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (citations omitted). This is especially true when the disparate

exclusion and inclusion are only lines away from each other.

On the other hand, the inclusion of a reference to § 1405 in § 1401(a)(3)(A) might mean that § 1405 considerations must be taken into account during arbitration proceedings. Indeed, a closer look at the entire MPPAA removes all doubt and leads decisively to the conclusion that the limitations in § 1405 must be considered in making a "determination" under §§ 1381 through 1399, which are themselves subject to mandatory arbitration.

■ The analysis is straightforward. Section 1401(a)(1), which requires arbitration, refers to determinations "made under sections 1381 through 1399." In turn, § 1381, which is clearly subject to arbitration, creates withdrawal liability and establishes its amount, stating:

> If an employer withdraws from a multiemployer plan in a complete withdrawal or partial withdrawal, then the employer is liable to the plan in the amount determined under this part [§§ 1381–1405] to be the withdrawal liability.

29 U.S.C. § 1381(a). Subsection (b) fixes the amount of withdrawal liability, stating:

> The withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted ... *in accordance with section 1405* of this title.

*Id.* § 1381(b) (emphasis added). Thus, any determination of withdrawal liability under § 1381 *must* take into consideration an employer's sale of assets or insolvency under § 1405. Indeed, a § 1381 determination of withdrawal liability cannot be accomplished in accordance with the statutory mandate unless it is "adjusted" in accordance with § 1405. *See id.* § 1381(b)(1)(D). Since consideration of § 1405 is a necessary step in determining

withdrawal liability under § 1381, disputes arising under § 1405 are subject to arbitration under § 1401(a)(1), which explicitly refers to § 1381.

Furthermore, § 1405 itself is a supporting provision that serves no other role than to limit liability in § 1381's general formula for calculating an employer's withdrawal liability. That § 1405 is merely a computational support provision is further shown by the fact that the specific computational instructions given in § 1391 for determining withdrawal liability are again stated to be subject to the limitations of § 1405. *See, e.g.,* 29 U.S.C. § 1391(b)(4)(B)(ii); *id.* § 1391(d)(2).

Section 1401(a)(1) (mandating arbitration), though clumsy, nonetheless speaks clearly. Even though § 1401(a) omits a *direct* reference to § 1405, it includes a *direct* reference to § 1381, which in turn includes a *direct* reference to § 1405. Section 1401(a) thus incorporates § 1405 *indirectly.* Even though § 1401(a)(1) could just as well have directly referenced § 1405, as § 1401(a)(3)(A) does, the absence of a reference to § 1405 in § 1401(a)(1) does not create doubt as to what is intended. Because withdrawal liability determinations that are "made under" § 1381 necessarily and explicitly include consideration of the § 1405 limitations and because § 1405 is only relevant as a step in making a withdrawal liability calculation under § 1381, we readily conclude that disputes with respect to § 1405 limitations must be arbitrated as § 1401(a) commands.

To conclude otherwise would lead to inexplicable and perverse results, especially in light of the MPPAA's structure. Every other determination that a plan sponsor must make in calculating an employer's withdrawal liability pursuant to § 1381's formula must be arbitrated under § 1401, and § 1405 would become the sole outlier.

Practice under the Act would become impossibly chaotic. A participating employer raising multiple objections to a plan sponsor's withdrawal liability calculation could proceed in a piecemeal fashion, raising the § 1405 limitation issues in federal court while arbitrating the other issues. Not only would such a fractured procedure make no sense, it would create innumerable problems. Would an arbitrator make a gross and tentative calculation under § 1391, only to wait for a proceeding in federal court, including trial and appeal, to determine any § 1405 adjustments to that gross number? On common issues of fact, whose factfinding would prevail? Moreover, under any such scheme, a solvent employer that contested its withdrawal assessment would be forced to present its issues to an arbitrator, while an insolvent employer would be free to proceed directly in federal court. BES has not presented any reasons, and we cannot think of any, why Congress would have countenanced the possibility of such a disjointed, Kafkaesque process.

Finally, requiring § 1405 disputes to be arbitrated furthers Congress' overarching purpose of enacting the MPPAA to amend ERISA. Congress enacted the MPPAA to shore up the financial stability of multiemployer pension plans. Before the MPPAA, ERISA did not adequately protect multiemployer pension plans from the adverse consequences of individual employers terminating their participation in such plans and leaving behind unfunded vested benefits. An employer's withdrawal from a multiemployer plan reduced the contribution base, which necessitated an increase in the contribution rate of remaining employers in order to cover the plan's existing unfunded vested benefits. As employers withdrew, the rising costs of continued participation in multiemployer plans increased the incentives for further withdrawals. *See Pension Benefit Guar. Corp.*

*v. R.A. Gray*, 467 U.S. 717, 722 n. 2, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). To reverse this trend, the MPPAA required withdrawing employers to pay their fair share of a plan's unfunded vested benefits by creating withdrawal liability, *see Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 216, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), and provided a streamlined process for resolving disputes over withdrawal liability determinations, thereby limiting dispute-resolution costs and preserving plans' assets. Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees. Rather, it chose to require arbitration, with judicial review, to create a more efficient dispute-resolution process. *See I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 426 (D.C.Cir. 1987).

In short, the arbitration process prescribed by the MPPAA is a significant part of Congress' efforts to shore up the financial stability of multiemployer pension plans. And issues under § 1405 are rightfully committed to that arbitration process.

### III

Alternatively, BES argues that the issues it has raised under 29 U.S.C. § 1405 are exempt from § 1401(a)'s arbitration requirement because the issues are purely legal ones, "requir[ing] statutory interpretation." As it contends, employing overly generalized statements of principles:

Arbitration was not the proper forum for determination of the issue of whether BES is entitled to reduction in assessed withdrawal liability pursuant to [section 1405] because determination of that issue requires statutory interpretation. The central facts in this action are not in dispute—namely, the fund as-

sessed withdrawal liability and BES did not initiate arbitration. The disposition of the withdrawal liability claim in the proceedings below, therefore, hinged on the applicability of the statutory deductions in withdrawal liability for employers that are insolvent or that have undergone a sale of substantially all of their assets.

There is some general support for the proposition that the preliminary legal question of whether an employer is subject to the MPPAA at all need not be arbitrated, because it is the MPPAA, after all, that contains the arbitration requirement. *See Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122–23 (4th Cir.1991) (*citing Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1250–51 (3d Cir.1987); *Banner Indus., Inc. v. Central States, Southeast & Southwest Area Pension Fund*, 875 F.2d 1285, 1291 (7th Cir.1989)). It does not follow, however, that *any* purely legal question involving statutory interpretation is exempted from the arbitration mandate in 29 U.S.C. § 1401(a)(1). To sustain that proposition would require us to ignore the specific characteristics of the MPPAA's arbitration mechanism.

The MPPAA mandates arbitration under § 1401(a) for *every* "determination" of withdrawal liability made under the MPPAA. The scope of this arbitration is not limited simply to resolving disputes over facts; it covers "*any dispute* concerning a determination" of withdrawal liability. The subject of the dispute—not whether the issue is factual or legal—defines the scope of arbitration. Thus, when there is a dispute concerning the determination of withdrawal liability, the dispute, whether over law, facts, or both, is committed *in the first instance* to arbitration. And that arbitration proceeding is conducted as any arbitration would be con-

ducted under the Federal Arbitration Act. *See* 29 U.S.C. § 1401(b)(3).

But unlike the Federal Arbitration Act, the MPPAA treats an award issuing from such a § 1401 arbitration like an agency determination—the arbitrator decides the issues in the first instance but then the decision is subject to judicial review. *See* 29 U.S.C. § 1401(b)(2); *id.* § 1451; *see also Teamsters Joint Council No. 83*, 947 F.2d at 122 (analogizing MPPAA's mandatory arbitration to a requirement to exhaust administrative remedies). Unlike arbitrations generally, courts review legal questions arising from § 1401 arbitration awards de novo, *see Central States, Southeast & Southwest Areas Health & Welfare Fund v. Cullum Cos., Inc.*, 973 F.2d 1333, 1337 (7th Cir.1992), and factual questions for clear error, *see* 29 U.S.C. § 1401(c); *Joseph Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 998–99 (7th Cir.1993). Thus, if a party commences an action in federal court without having first exhausted the mandatory arbitration process, it will be subject to a failure-to-exhaust defense.

In short, the MPPAA requires arbitration in the first instance for *any dispute* concerning a determination of withdrawal liability, whether the dispute is about a legal or factual matter, and then affords judicial review of the arbitration award in a federal court. Failure to follow this specified process will lead to dismissal of the federal action on the basis of waiver.

In this case, the prequalifying legal question of whether BES is subject to the MPPAA is not in play. The only question BES has raised is whether the plan sponsor properly calculated withdrawal liability imposed by the MPPAA when it did not grant BES the reductions that it now claims under 29 U.S.C. § 1405. As we have already noted above, this issue "concerns" a "determination" of withdrawal lia-

bility and therefore must, even if it were an issue of pure statutory interpretation, be arbitrated in the first instance.

Moreover, we do not, in any event, agree with BES's contention that the limitation issues under § 1405 are pure questions of law. Numerous factual questions exist about, for example, whether International Vision Corporation of Canada, the purchaser, was a corporation "unrelated" to International Vision of N.Y. (BES's name before the sale of assets). *See* 29 U.S.C. § 1405(a)(1). There are factual questions about the "liquidation or dissolution value" of BES at the time of the sale of its assets. *See id.* § 1405(a)(1), (2); *id.* § 1405(d). There are factual questions about whether, after the sale, BES was insolvent. *See id.* § 1405(b). Not only were these and other related factual issues well suited for arbitration, but, as we have held, they were required to be resolved in arbitration by an arbitrator charged with resolving every dispute concerning a determination made about withdrawal liability.

Because BES failed to pursue arbitration, as required by 29 U.S.C. § 1401(a)(1), the issues it now seeks to raise for the first time in federal court about its withdrawal liability are deemed waived. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*